IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

           Plaintiff,

    v.

JENNIFER HESS,

           Defendant.

Criminal No. 18-0142

ELECTRONICALLY FILED

**MEMORANDUM ORDER**

Before the Court is a Petition for Writ of Error *Coram Nobis* filed on behalf of
Defendant. ECF 241. The Government filed a response in opposition (ECF 245) and Defendant
filed a reply.  ECF 250.  The matter is ripe for disposition, and for the reasons that follow the
Court will deny Defendant's Petition.

**I. Background**

On July 17, 2018, a Western District of Pennsylvania grand jury returned a Superseding
Indictment charging Defendant with violating the Controlled Substances Act.  The superseding
indictment was comprised of fifty-one counts.  See ECF 25.

On May 15, 2019, pursuant to plea agreement with the Government, Defendant pled
guilty to three counts: Count Two – Health Care Fraud, in violation of 18 U.S.C. § 1347; and
Counts Twenty and Twenty-One – Unlawfully Distributing and Aiding and Abetting in the
Unlawful Distribution of a Schedule III Controlled Substance, in violation of 21 U.S.C.
§§ 841(a)(1), 841(b)(1)(E)(i), and 18 U.S.C. § 2.  ECF 166 and ECF 164-1.

During her change of plea hearing, Defendant admitted to owning an operating
Redirections Treatment Advocates ("RTA") which employed eight physicians (as independent

contractors) authorized by the Drug Abuse Treatment Act to practice medically assisted treatment of opioid-addicted patients by prescribing Subutex and suboxone, both of which contain buprenorphine.  ECF 215.

Following her guilty plea, on October 30, 2019, this Court sentenced Defendant to three years of probation, with 90 days of home detention, and 100 hours community service at each of the three counts, all to run concurrently.  The Court also imposed a mandatory $300.00 special assessment, a $10,000 fine, and restitution in the total amount of $80,000.00.

## II. Standard of Review

A Writ of Error *Coram Nobis* is available to federal courts in criminal matters under the All Writs Act, 28 U.S.C.A. § 1651(a) (West 1966). [footnote omitted] *United States v. Morgan*, 346 U.S. 502 (1954). It is used to attack allegedly invalid convictions which have continuing consequences when the petitioner has served her sentence and is no longer "in custody" for purposes of 28 U.S.C.A. § 2255. The petitioner must show that she is suffering from continuing consequences of the allegedly invalid conviction. *Id.* at 512–13.

This Court must grant a Petition for Writ Of Error *Coram Nobis* if: (1) Defendant is no longer in custody; (2) Defendant suffers continuing consequences from the purportedly invalid conviction; (3) Defendant provides sound reasons for failing to seek relief earlier; (4) Defendant had no available remedy at the time of trial; and (5) Defendant asserts errors of a fundamental kind.  *Ragbir v. United States,* 950 F.3d 54, 62 (3d Cir. 2020); *see also United States v. Stoneman*, 870 F.2d 102, 106 (3d Cir. 1989).

**III. Analysis**

   **A.      Defendant's Plea Agreement Prohibits this Court from Granting Defendant's Writ**

A Petition for a Writ of Error *Coram Nobis* provides a way to collaterally attack a criminal conviction for a person who is no longer "in custody" and therefore, cannot seek *habeas* relief under 28 U.S.C. § 2255 or § 2241. *See United States v. Morgan*, 346 U.S. 502, 507, 510–511, (1954). *Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013).  Defendant in this case is no longer in custody and claims to be suffering from the continuing consequences stemming out of her allegedly invalid conviction.

Defendant entered into a plea agreement with the Government.  ECF 164-1.  On May 15, 2019, Defendant pled guilty to three counts (Count Two, Count Twenty, and Count Twenty-One) of the superseding indictment pursuant to the terms of her plea agreement.

Importantly, in paragraph 11 of her plea agreement, Defendant indicated that she:

> . . . further waives the right to file a motion to vacate sentence under 28 U.S.C. 2255 attacking her conviction or sentence **and the right to file any other collateral proceeding attacking her conviction or sentence.**

ECF 164-1 (emphasis added).

Because of Defendant's waiver in her binding plea agreement, Defendant may not collaterally attack her sentence through a Petition for Writ of Error *Coram Nobis* or any other modality.  Moreover, this Court conducted a thorough Rule 11 colloquy to satisfy itself that Defendant knowingly understood all of the rights she would have to relinquish by pleading guilty.[1] Accordingly, the Court denies Defendant's Petition for Writ of Error *Corum Nobis* (ECF

---

[1] During Defendant's change of plea hearing, Defendant admitted to the following: (1) she knew and understood her trial rights, and that she was giving up those trial rights; (2) she still intended to plead guilty even knowing the rights she was relinquishing; (3) she understood the maximum sentence the Court could impose at each count as well as the guideline range, and had discussed those sentencing matters with her attorney; (4) she signed the plea agreement (ECF 94-1) after reviewing it with her

239), for the simple reason that she knowingly, and with the advice of his counsel, agreed to waive her rights to file such a petition, or any petition collaterally attacking her sentence.

### B.    Defendant's Reliance on *Ruan v. United States* is Misplaced

However, Defendant contends that a recent case, *Ruan v. United States*, 142 S. Ct. 2370 (2022), applies retroactively thereby rendering the conduct which formed the basis of the charges to which Defendant pled guilty, as "conduct that is not criminal." According to Defendant, this Court must now intercede to prevent injustice, ignoring her plea agreement wherein she agreed to not collaterally attack her sentence. This Court disagrees with Defendant's position and with the application of *Ruan* to the facts presented by Defendant's case.

In *Ruan,* the two defendant medical doctors were convicted under 21 U.S.C. § 841 of dispensing controlled substances not "as authorized."[2] The question before the Court concerned the defendants' state of mind which the Government had to prove in order to convict the doctors of violating the statute. The Court noted that a prescription is only authorized when a doctor issues it "for a legitimate medical purpose ... acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a) (2021).

During their trials, both doctors argued their respective dispensation of drugs was lawful because the drugs were dispensed pursuant to valid prescriptions. Both defendant doctors argued for a jury instruction on *mens rea* – specifically, that the juries had to consider whether they knowingly or intentionally deviated from the standard that a prescription is only authorized when

---

attorney and she understood all of its terms and contents; and (5) she understood that because she signed the plea agreement she was giving up her right to appeal (with limited exceptions) and her right to collaterally attack her sentence. ECF 106.

[2] Title 21 U.S.C. § 841, makes it a federal crime, "[e]xcept as authorized[,] . . . for any person knowingly or intentionally . . . to manufacture, distribute, or dispense . . . a controlled substance," such as opioids. 21 U.S.C. § 841(a).  *Ruan v. United States*, 213 L. Ed. 2d 706, 142 S. Ct. 2370, 2374–75 (2022).

a doctor issues it "for a legitimate medical purpose . . . acting in the usual course of his professional practice."

In one case, the defendant doctor asked for, but was denied, a jury instruction that he subjectively knew that his prescriptions fell outside the scope of his prescribing authority.  In the other case, the defendant doctor requested and received, an instruction telling the jury that if it concluded the doctor acted in good faith – meaning that he attempted to act in accordance with what a reasonable physician would believe to be proper medical practice – then the jury had to conclude that the doctor "acted in an honest effort to prescribe for patients' medical conditions in accordance with generally recognized and accepted standards of practice."  In both cases, the jury convicted the defendant doctors.

Turning to the instant matter, this case does not involve a fact-finding jury.  Here, Defendant did not go to trial where a jury had to consider her *mens rea,* but instead, with the advice of her counsel, she pled guilty to three of the fifty-one counts leveled against her in the superseding indictment.  ECF 94-1.  Her guilty plea took place in 2019, approximately three years before the *Ruan* decision.

Defendant argues that *Ruan* retroactively applies[3] to her situation because, "under *Ruan* [her] conduct is not criminal" and further claims that Government never proved Defendant had the required *mens rea*.  Ignoring the fact that the Government was <u>not</u> required at the time of the plea hearing in this matter to prove a *Ruan*-created level of *mens rea,* the Government, nevertheless, <u>did</u> state the following which describes Defendant's *mens rea*:

> The government's evidence at trial would consist of documents, including
> e-mails, text messages, undercover recordings and witness statements.

---

[3] The Court makes no ruling on whether *Ruan* applies retroactively to this matter. The Court finds for the reasons set forth below, that whether or not *Ruan* applies retroactively, the Government did demonstrate for the Court that Defendant possessed the *mens rea*, and thus, intended to commit the crimes for which she was charged.

As to Counts 20 and 21, the defendant, Jennifer Hess, aided and abetted Michael Bummer and Madhu Aggarwal, among others, to legally divert Schedule III narcotics by issuing prescriptions outside the course of professional practice and not for legitimate medical reason. . . .

Redirections Treatment Advocates, known as RTA, was an opioid treatment practice with offices in Washington, Bridgeville, PA and Morgantown, Weirton and Moundsville, West Virginia.

The defendant, Jennifer Hess, was the owner, founder of RTA. Christopher Handa was in charge of daily operations. Mr. Handa has entered a guilty plea before this Court. RTA employed approximately eight physicians who were authorized, pursuant to the Drug Abuse Treatment Act of 2000 to practice medically assisted treatment to opioid addicted patients through the prescription of subutex and suboxone, which are Schedule III narcotics.

Drs. Bummer and Aggarwal were DATA waived physicians who were employed as independent contractors by RTA. RTA only accepted cash or credit cards and did not take health insurance. The initial visit was $175 and subsequent visits were $120.

21 CFR Section 1306.05 states: Manner of issuance of prescriptions. It reads as follows under (a) all prescriptions for controlled substances shall be dated as of, and signed on the day when issued and shall bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address and registration numbers of the practitioner.

The RTA physicians would only conduct minimal physical examination and medical history on the first in-take visit. No such follow-up visits were conducted by the physicians unless requested by the patient. Counseling sessions at RTA were not routinely conducted by licensed counselors. Drug abuse counseling is required to be provided by all opioid treatment practices by a licensed counselor.

Drs. Bummer and Aggarwal would pre-sign blank prescriptions in advance provided to Ms. Hess, Mr. Handa and others who would fill in the patient's name, date and prescription. The physician was not present at the RTA offices where the prescriptions were issued or written. On some occasions, Ms. Hess, Handa or others would sign Dr. Bummer's or Dr. Aggarwal's name and the names of other RTA physicians to blank prescriptions which were given to patients.

At Count 20 on November 29, 2017, an undercover task force officer using the fictitious name of John Wagner obtained a pre-signed prescription of suboxone by Dr. Bummer which was filled in by Christopher Handa who set the amount of dosage and duration of prescription. That occurred at the Washington, PA location of RTA.

At Count 21 on August 1, 2017, an undercover task force officer using the fictitious name of John Kelly visited the Bridgeville, Pennsylvania location of RTA. He received a prescription that was pre-signed by Dr. Aggarwal who was not in the office and did not even examine Mr. Kelly. The undercover officer observed the blank pre-signed script being filled in by Mr. Christopher Handa.

At each visit, the patients were required to complete progress notes. Dr. Bummer and Dr. Aggarwal and other RTA physicians would sign these forms, even though they did not see the patients and were not present. On occasion, Ms. Hess, Handa or others would sign the physician's name to make it appear the physician was present.

The physicians were paid in cash, calculated from the number of patient visits from which prescriptions were provided. Physicians were paid even when they did not see the patients and did not complete the prescriptions. On these occasions, Hess, Handa or others completed the blank pre-signed prescriptions.

Count 2 relates to the defendant, Jennifer Hess, aiding and abetting Dr. Bummer, Dr. Aggarwal and others to commit healthcare fraud. Medicare and Medicaid are both federal healthcare programs under 18 U.S.C. 24(b). Medicare and Medicaid were defrauded when RTA patients would obtain the blank pre-signed prescriptions signed by the physicians, which were completed by the defendant and others, and filled the prescriptions at pharmacies using their Medicaid or Medicare Insurance.

ECF 215.

Based on the above excerpt of the transcript from the change of plea hearing, this Court concludes that the Government thoroughly demonstrated Defendant's knowing intent to commit the crimes charged against her in Counts Two, Twenty, and Twenty-One of the superseding indictment. Defendant admitted to all of the above conduct set forth by the Government, as follows:

THE COURT: Ma'am, in a moment I will ask you whether you agree with the government's summary of what you did, but first, do you understand your answers may be later used against you in a prosecution for perjury or making a false statement if you do not answer truthfully?

THE DEFENDANT: I do.

THE COURT: Do you agree with the prosecution's summary of what you did?

THE DEFENDANT: I do.

THE COURT: Are there any additions or corrections you wish to make?

THE DEFENDANT: No.

ECF 215.

Despite the fact that Government did not have to show *mens rea* as established in 2022 by the *Ruan* decision for any of the charges to which Defendant pled guilty in 2019, the Government did in fact establish (to this Court's satisfaction) that Defendant knowingly intended to violate the law by aiding and abetting her co-defendant, Michael Bummer, as well as others who worked with RTA, to illegally divert Schedule III narcotics by illegally assisting in the completion of the prescriptions prepared by her co-defendant and others, in advance of the patient's appointment, outside the course of professional practice and not for legitimate medical reason.  In so doing, Defendant knowingly and intentionally conspired to aid and abet the distribution of a schedule III controlled substance in violation of the Controlled Substance Act and commit health care fraud.  Accordingly, Defendant's attempt to claim that she did not possess the requisite intent to form the requisite *mens rea* is utterly without merit, and for this reason as well, the Court will deny Defendant's Petition for Writ of Error *Corum Nobis*.

**IV. Conclusion**

The Court finds that Defendant knowingly and with the advice of counsel waived her right to collaterally attack her sentence through this Petition for Writ of Error *Corum Nobis*, and thus his Petition will be denied.  Further, even if the *Ruan* decision were applicable to this matter, the Government ably demonstrated to this Court that Defendant possessed the necessary *mens rea* by knowingly and intentionally signing blank prescription forms and further conspiring with others at RTA to distribute a schedule III controlled substance in violation of the Controlled Substance Act.

**ORDER**

AND NOW this 13th day of July 2023, based on the forgoing law and authority, this Court hereby **DENIES** Defendant's Petition for Writ of Error *Corum Nobis* (ECF 241) and thereby declines to vacate her conviction.

s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All ECF Registered Counsel of Record